**Robert Lee WILLIAMS, Appellant (Defendant below),**

v.

**STATE of Wyoming, Appellee (Plaintiff below).**

**No. 4635.**

Supreme Court of Wyoming.

Dec. 15, 1976.

Donald P. Prehoda, Jr., Corthell, King, McFadden, Nicholas & Prehoda, Laramie, for appellant.

V. Frank Mendicino, Atty. Gen., Craig E. Kirkwood, Deputy County and Pros. Atty., Albany County, Laramie, for appellee; Frank R. Chapman, Law Clerk, Cheyenne, on the brief.

Before McCLINTOCK, RAPER, THOMAS and ROSE, JJ., and ARMSTRONG, District Judge, Retired.

ARMSTRONG, District Judge, Retired.

Defendant was convicted by a jury on October 29, 1975, of two counts of burglary and one count of receiving stolen goods all on July 24, 1975, in Laramie, Albany County, Wyoming. Defendant was sentenced on November 19, 1975, to serve four to six years on each count to be served concurrently. He appeals to this Court on four grounds:

1. That his arrest was illegal because the arresting officer in Montana did not have an arrest warrant nor probable cause.

2. The search of his residence was illegal and the consent to search given by defendant's wife was coerced and involuntary.

3. The search of defendant's car in Billings, Montana, was illegal.

4. That defendant has standing to object to the search of his home and his car.

The Court affirms the judgment in all respects.

The facts may be briefly stated as follows: Around one o'clock in the morning of July 24, 1975, a Laramie police officer had reported a two-toned 1959 car bearing Montana license plates numbered 47518 in the area of Montgomery Ward's downtown store. Later, that day when an attempted unlawful entry of that store, and a burglary at Gibson's Discount store (with the loss of 45 hand guns, a quantity of ammunition and two duffle bags) and another break-in at Ward's warehouse (with the loss of two television sets and stereo equipment) were reported and investigated, the Laramie detectives about 1:00 p.m. located a car of the description and bearing the same license as the one reported at 1:00 a.m. Ms. Watts was in possession of the car and said she lived at 1213 South 4th Street in Laramie. She proceeded to that address, followed by the officers, but entered a house numbered 1213½ South 4th. An officer entered the second house with the permission of the occupant, Sharon Williams, the wife of the defendant. While there Ms. Watts said her name was Bernadette Watts Lande. The officers asked her for and received permission to enter 1213 South 4th to look for and question Mr. Lande. He was not there, but in the course of looking for him, the officers observed a new Ward's Airline 19 inch television set and an 8-track tape stereo record

player and speakers which were identical to those reported stolen from Ward's warehouse early that day. One officer initialed the items so noticed and departed.

Later that evening the officers returned to 1213½ South 4th Street (the defendant's house) and seized a 19 inch color television and two stereo speakers which were also identical in model to Ward's description. They returned to 1213 South 4th and seized the other Ward's 19 inch color television, a stereo with an 8-track tape player and two speakers which they had observed earlier.

In the interim, Lueras Oldsmobile salesroom reported a break-in and the loss of a 17 inch General Electric television.

The Laramie officers had found empty plastic bags at Gibson's which had contained duffle bags. They also took photographs of boot prints found in the mud at Gibson's, which were also entered in evidence. The pictures compared favorably with Lande's boots and the unusual marking on the heels shown in the photographs. The same heel markings were found at Ward's warehouse. The boots were allowed in evidence.

*Legality of Billings Arrest*

■ Appellant relies on *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L. Ed.2d 306 (1971) and *State v. Richards,* 110 Ariz. 290, 518 P.2d 113 (1974) for his proposition that probable cause for a warrantless arrest was lacking in Laramie ergo it was also missing in Billings where appellant and Lande were arrested after receiving information by phone and teletype from Laramie police. *Whiteley, Richards* and the appellant agree that the Billings officers were entitled to act on the strength of the police bulletins, subject, however, to the risk that Laramie police then had the required facts upon which to base a conclusion that appellant probably committed the crimes charged.

The Court in *Whiteley v. Warden,* 401 U.S. at 568, 91 S.Ct. at 1037, held that the basic complaint for an arrest warrant signed by a sheriff in another county was fundamentally erroneous because it contained only conclusions. However, the radio bulletin giving descriptions of the suspects and their car, as well as details of the burglary, was relied on by the arresting officer in an adjoining county to effect an arrest and search. The Court said:

"We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. * * *"

Earlier the Supreme Court had said in *U. S. v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684,

" * * * Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number. * * *"

As said in *State v. Richards,* supra, and to the same effect in many other authorities:

" * * * Probable cause exists where the arresting officers have reasonably trustworthy information of facts and circumstances which are sufficient in themselves to lead a reasonable man to believe an offense is being or has been committed and that the person to be arrested is committing or did commit it."

A brief review of the evidence in this case leads the Court to observe that the Laramie police, unlike the San Diego police in *Richards,* had exercised excellent detection functions to arrive at probable cause for the arrest of appellant.

While talking to the Laramie (Albany County) prosecuting attorney, in the presence of Officer Roylance, on July 24, 1975, Roylance testified that appellant's wife asked a rhetorical question: "Those television sets are stolen, aren't they?". She

further stated that the television sets had arrived at her house while she was working, between 11:00 p.m. on July 23 and 7 o'clock the next morning; that her husband had given them to her as an anniversary present; that his driver's license had incorrect initials preceding his name; that he was an escapee from the Michigan State Prison at Marquette, Michigan; that he was sentenced there to serve 2½ to 5 years; that there was a warrant out for him; that she had last seen her husband at about 1:00 p.m. on July 24th; that he might be going back to Billings, Montana; she gave the Laramie officials a vehicle registration in her name for a 1959 Oldsmobile; that her husband was driving that car; the registration certificate gave the license number and other descriptions of the car; that she readily gave permission to the seizure of the television set and stereo equipment; that the model numbers of the equipment were identical to those taken from Montgomery Ward's warehouse; Mrs. Williams also advised the police that her husband would probably use his gun to avoid going back to prison, if he had a gun with him.

When Mrs. Williams made the foregoing statements she was not under arrest nor was she taken into custody. The record is devoid of any evidence of coercion, as appellant now claims. The statements were voluntarily made in 15 minutes in a police car parked near her house. *Carpenter v. U. S.*, 463 F.2d 397, 401 (10th Cir. 1972)

Both Mrs. Williams and Ms. Watts disappeared soon after the incident and did not appear as witnesses at the trial. The testimony from which most of the above facts were taken came in large part from direct and cross-examination of Officer Roylance, who was present at all times. His testimony was not controverted. The officer also connected Lande and his footprints to both burglaries and in the company of appellant. He also related that Ms. Watts told him that the television and stereo equipment in her house had been

brought there the night before by Lande. The equipment was identical to that taken from Ward's warehouse.

There is no merit in the assertion that Mrs. Williams' statements were unreliable. The statements against her husband's interest would indicate the reverse. The fact finders found nothing untrustworthy in her statements which the officer related.

As a result it is clear that the facts, and reasonable inferences from them, were sufficient to meet the definition of probable cause.

With that background the Billings officers had every fact necessary to effect the arrest of appellant for the Gibson's and Ward's warehouse burglaries.

The above recitation disposes of appellant's first two issues on appeal, namely the arrest without probable cause and the coerced and involuntary consent to search given by appellant's wife.

Appellant's third issue on appeal concerns the legality of the search of his car in Billings.

Acting on the information received from the Laramie Police Department, two Billings, Montana, officers observed a car of the description given them leaving the Interstate at an exit in Billings. They stopped the vehicle, ordered the occupants out of the car, patted them down, gave each of them the Miranda rights, placed them under arrest, recognized Lande as a parolee of Montana having been arrested by them before. Both officers, Hensley and Timarco, testified that appellant consented to a search of "his" car, and that he had said the trunk lock was broken and would not open. Appellant denied giving permission to search but testified: "As we were going back he wanted me to open the trunk, said open the trunk and I said it wouldn't open anyway, can't open it." Both officers also testified that they had been informed by way of information from Laramie that another television set, 45 hand guns and some ammunition, probably in a

duffle bag, had not been recovered in Laramie. Appellant admitted he was an escapee.

The Billings officers also testified that after booking the two suspects they drove the car to the city impoundment lot; that there are General Orders of the Billings police department to inventory all items taken from an impounded car and "to remove any property from the vehicle that may be lost or stolen and to protect the police department from any complaints or allegations by the person who owns the car that there were items taken" while impounded. It was during this standard procedure that one of the officers inserted a screwdriver in the trunk lock and in 15 seconds opened it. A television and a duffle bag containing miscellaneous hand guns were immediately observed. Those items were taken by Detective Roylance from the Billings officer and introduced in evidence without objection except appellant's "continuing objection" made early in the trial to the effect they were illegally seized. They were identified by the Billings and Laramie officers and by the store employee. They consisted of 33 hand guns, a green GI type duffle bag and a 17 inch General Electric television.

Testimony thereafter connected the television as the one taken from Lueras Oldsmobile garage and the remainder of the items as being those taken from Gibson's Discount Center on the night in question.

Until July, 1976, the United States Supreme Court had not determined the validity of police inventories of the contents of impounded vehicles. The case which decided the question was *South Dakota v. Opperman,* —— U.S. ——, 96 S.Ct. 3092, 49 L.Ed.2d 1000. It held that under certain circumstances, (apparently all present in the case at bar) seizure of the contents was legal and the intrusion reasonable although no warrant had been issued. In arriving at that conclusion the court considered four factors:

"* * * the protection of the owners' property * * * the protection of the police against claims or disputes over lost or stolen property * * * the protection of the police from potential danger * * * police frequently attempt to determine whether a vehicle has been stolen. * * *"

The court said *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), *Harris v. U. S.,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), and *Cady v. Dombrowski,* 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) pointed the way to the resolution of *Opperman.*

▆▆▆ *Opperman* does not define the scope of an inventory search. It is apparent, however, that probable cause, as it is usually required, is not necessary for an inventory search. This is especially true when there is a general order promulgated by the police or sheriff's departments mandating such searches, as there was in Billings. It did approve the opening of the unlocked glove compartment wherein marijuana was found. In the case at bar the officers used a quick technique to open the locked trunk of the car. *Opperman,* therefore, is not on all fours, but it would appear that it is but a short step away. For the purposes warranting such a search it appears that it is just as reasonable to look in the trunk as in a glove compartment, especially when the trunk was so readily opened. However, *Opperman* is bolstered in this case by the enigmatic consent to search given by appellant to the Billings officers, as quoted above.

▆▆▆ Furthermore, if it was necessary, the Billings officers had sufficient probable cause to search the vehicle at the scene of the arrest and, therefore, at the station house without obtaining a warrant and over the objection of appellant, under the holding of *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209, (decided December 1, 1976). *Texas* and *Cardwell v. Lewis,* 417 U.S. 583, 595, 94 S.Ct. 2464, 2471, 41 L.Ed.2d 325 (1974) follow the leading case of *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 29 L.Ed.2d 419 (1970).

In any event we hold that the search of appellant's wife's car in Billings was not illegal.

*Standing*

■ The State attacks the appellant's standing to challenge the legality of the searches. Appellant counterpoints that he does have standing. First, with respect to the search of 1213 South 4th Street (the Lande-Watts house), appellant was not there during the search, he had no expectation of privacy, he had no proprietary or possessory interest in it or the items seized, nor was he the victim of the search.

■ Second, with respect to the search and seizure of items from 1213½ South 4th Street (Mr. and Mrs. Williams' residence): Again the appellant was not present and Mrs. Williams' consent to both the search and seizure and the status of appellant as an escapee (which his wife had indicated) and the gift of the seized items to his wife as an anniversary present all fatally derogate from his obligation to show that he was the victim of an illegal search and seizure.

Appellant suggests "that this court should relax the requirement of standing", but on both alleged fourth amendment violations this Court is constrained tò embrace the teachings in the following authorities.

*Alderman v. U. S.*, 394 U.S. 165, 171, 89 S.Ct. 961, 965, 22 L.Ed. 176 (1969) says in part:

"* * * The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing."

*Goldstein v. U. S.*, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942); *Wong Sun v. U. S.*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

*Jones v. U. S.*, 362 U.S. 257, 261, 80 S. Ct. 725, 731, 4 L.Ed.2d 697 (1960), says it this way:

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' [the quote comes from the Federal Rules of Criminal Procedure 41(e); Wyoming Rules of Criminal Procedure 40(e) contains identical language] one must have been the victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. * * *

"Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as a basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy. * * *"

See also *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Simmons v. U. S.*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

■ Fourth Amendment rights are personal rights. The capacity to claim protection against unreasonable searches or seizures does not depend on property rights in the premises but upon whether the place was one where he could reasonably expect freedom from intrusion. *Katz v. U. S.*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; *U. S. v. Novello*, 519 F.2d 1078 (5th Cir. 1975).

In *Mares v. State*, 500 P.2d 530, 534 (Wyo.1972) it was said:

"It has been held that one who lacks legitimate presence on premises has no standing to object to the search. *Palmer v. State*, 14 Md.App. 159, 286 A.2d 572, 578 (1972). Mares of course, by reason of his status as an escapee, was not legitimately on the premises of Carol Ortega. Instead of having a reasonable ex-

pectation of freedom from governmental intrusion, he had every right to expect that."

■ Appellant argues that the Laramie police by taking the serial numbers from the suspicious looking electronic equipment over the objection of Ms. Watts on their first entrance to her house looking for Lande, poisoned all of the subsequent police activities. The Court does not agree. Lande was not tried and did not testify in Wyoming. The only pertinent evidence involving Lande in this case was his distinctive boot-prints and that evidence was used to connect the Gibson and the Ward burglaries. However, those prints were observed prior to taking the serial numbers, completely independent of Ms. Watts, her house or the serial numbers. The footprints were important and added a step in the study of probable cause by the police and the jury. They were not, however, illegally obtained and offer no more solace or standing to appellant then any alleged cause for suppressing evidence of Lande's search and seizures. The search of Lande's home, even with no consideration given to Ms. Watts' consent, did not in any manner affect the consensual search of appellant's home. Even if the serial numbers search at Lande's was considered to have been illegal, the poison from that fruit did not contaminate the search of appellant's home. For a full discussion and annotation on the fruit of the poisonous tree doctrine see 43 A.L.R.3d 385.

In *U. S. v. Matlock*, 415 U.S. 164, 94 S. Ct. 988, 39 L.Ed.2d 242 (1974) the defendant was arrested for bank robbery in front of a house leased by the parents of the woman who was living with him in the leased premises. Without asking defendant for permission to search the house the officers asked the woman. The Court held that a warrantless search could be conducted when consent to search is given by "one who possesses common authority over premises and effects" and such consent is "valid as against the absent, nonconsenting person with whom that authority is shared."

In footnote 7, p. 171, 94 S.Ct. p. 993, of the opinion the court says:

"* * * The authority which justifies the third-party consent does not rest upon the law of property * * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their members might permit the common area to be searched."

*Matlock* has been followed in *U. S. v. Piet*, 498 F.2d 178 (7th Cir. 1974); *U. S. v. Novello*, 519 F.2d 1078 (5th Cir. 1974); *People v. Stacey*, 317 N.E.2d 24 (Ill. 1974); *State v. Gordon*, 543 P.2d 321 (Or. 1975).

There is no question that Mrs. Williams had "common authority" with appellant over the premises and effects; there was mutual use of the house; both had joint control and access; she had the right to permit the inspection on her own right; appellant assumed the risk that she would permit the search. Those basic evidentiary facts plus the lack of evidence of involuntary consent on the part of Mrs. Williams forecloses appellant's standing to complain that he was the victim of an invasion of privacy.

The Court finds no error. The judgment and sentence is affirmed.