2006 WY 79

**Robert Ray JOHNSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–163.**

Supreme Court of Wyoming.

June 29, 2006.

Representing Appellant: Vaughn H. Neubauer, Laramie, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Robert Ray Johnson was driving a rental car when he was stopped for speeding. When it was discovered that Mr. Johnson was an unauthorized driver of the rental car, the car was impounded. An inventory search led to the discovery of narcotics in a duffle bag belonging to Mr. Johnson. Mr. Johnson filed a motion to suppress evidence obtained during the inventory search. The district court denied the motion. Subsequently, Mr. Johnson entered a conditional guilty plea to one count of possession of a controlled substance with intent to deliver and one count of felony possession of a con-

trolled substance. On appeal, he contends the district court erred by denying his motion to suppress. We affirm.

## ISSUES

[¶ 2]   Mr. Johnson presents two issues on appeal:

I.   The district court erred when it concluded that Trooper Dyer had a right to include Mr. Johnson's belongings with an impounded vehicle when he was not under arrest and Trooper Dyer lacked reasonable suspicion to believe that his baggage contained contraband or weapons.

II.   The district court erred when it concluded that Article One, Section Four of the Wyoming Constitution as applied to Mr. Johnson permits the opening of closed containers during inventory searches when the Trooper lacked any objective indication that his baggage contained contraband or weapons.

The State frames the issue on appeal as:

Did the district court properly deny [Mr. Johnson's] motion to suppress?

## FACTS

[¶ 3]   On August 8, 2004, Wyoming Highway Patrol Trooper Dan Dyer stopped a rental car driven by Mr. Johnson for traveling 89 miles per hour in a 75 mile per hour zone on Interstate 80. Trooper Dyer approached the vehicle and requested a driver's license. He also obtained the rental car agreement from Mr. Johnson. Upon examination of the agreement, Trooper Dyer determined that Mr. Johnson and his passenger were not authorized drivers. Trooper Dyer contacted dispatch to inquire whether the rental company wanted the vehicle impounded. While waiting for a response, Trooper Dyer prepared a speeding citation for Mr. Johnson.

[¶ 4]   Dispatch advised Trooper Dyer that the rental company wanted the vehicle impounded. Trooper Dyer informed Mr. Johnson of the impoundment and that an inventory of the vehicle's contents would be taken pursuant to Wyoming Highway Patrol policy.

In the course of conducting the inventory, Trooper Dyer unzipped a duffle bag. He discovered two clear sacks containing what he believed to be marijuana.

[¶ 5] Mr. Johnson was arrested and subsequently charged with one count of possession of a controlled substance with intent to deliver, one count of felony possession of a controlled substance, and one count of conspiracy to deliver a controlled substance. The conspiracy charge was eventually dismissed. On September 30, 2004, Mr. Johnson filed a motion to suppress evidence, contending that the search violated the Fourth and Fourteenth Amendments to the United States Constitution and article 1, § 4 of the Wyoming Constitution. After a hearing, the district court denied the motion.

[¶ 6] On November 22, 2004, Mr. Johnson entered a conditional guilty plea to the two remaining counts specifically reserving the right to appeal the denial of his motion to suppress. A sentencing hearing was held on April 5, 2005. Mr. Johnson was sentenced to not less than three nor more than five years incarceration on count one and not less than two nor more than four years incarceration on count two. The sentences were ordered to be served concurrently. The district court recommended that Mr. Johnson participate in the boot camp program. Mr. Johnson timely filed this appeal.

### STANDARD OF REVIEW

[¶ 7] We recently set forth our standard of review for the denial of a motion to suppress in *O'Boyle v. State*, 2005 WY 83, ¶ 18, 117 P.3d 401, 407 (Wyo.2005):

> Rulings on the admissibility of evidence are within the sound discretion of the trial court. *Urbigkit v. State*, 2003 WY 57, ¶ 39, 67 P.3d 1207, ¶ 39 (Wyo.2003). We will not disturb such rulings absent a clear abuse of discretion. *Id.* An abuse of discretion occurs when it is shown the trial court reasonably could not have concluded as it did. *Hannon v. State*, 2004 WY 8, ¶ 13, 84 P.3d 320, ¶ 13 (Wyo.2004). Factual findings made by a trial court considering a motion to suppress will not be disturbed unless the findings are clearly erroneous. *Meek v. State*, 2002 WY 1, ¶ 8, 37 P.3d

1279, ¶ 8 (Wyo.2002). Because the trial court has the opportunity to hear the evidence, assess witness credibility, and draw the necessary inferences, deductions, and conclusions, we view the evidence in the light most favorable to the trial court's determination. *Id.* Whether an unreasonable search or seizure occurred in violation of constitutional rights presents a question of law and is reviewed *de novo*. *Vasquez v. State*, 990 P.2d 476, 480 (Wyo.1999).

### DISCUSSION

[¶ 8] Mr. Johnson asserts that the district court erred by denying his motion to suppress for two reasons. First, Mr. Johnson claims that his personal belongings should not have been included in the inventory of the rental vehicle. Second, Mr. Johnson contends that even if his belongings were properly included in the search, article 1, § 4 of the Wyoming Constitution prohibits the search of closed containers during an inventory search.

### *Inclusion of Mr. Johnson's Belongings in the Inventory Search*

[¶ 9] Mr. Johnson claims that his belongings were impermissibly searched because he was not under arrest at the time of the search and Trooper Dyer did not have reasonable suspicion or probable cause to search for evidence of a crime. To support his contention, Mr. Johnson states that a traffic stop is a seizure of both the person and the vehicle stopped and, therefore, probable cause, reasonable suspicion, or consent was required for Trooper Dyer to detain Mr. Johnson. Further, Mr. Johnson states that detentions must not be unnecessarily prolonged and they must be reasonable under all the circumstances. He asserts that Trooper Dyer had "no objectively reasonable reason to suspect Mr. Johnson of doing anything wrong other than speeding and violating a rental contract." He claims that absent probable cause or reasonable suspicion, Mr. Johnson should have been able to proceed on his way. In making his claim, Mr. Johnson does not contend that it was improper to impound the rental car or that an inventory

search of the vehicle was impermissible. Rather, he contends he should have been permitted to retrieve his baggage prior to the search.

[¶ 10] As Mr. Johnson correctly notes, searches and seizures are governed by a standard of reasonableness under the circumstances. *See O'Boyle,* 117 P.3d at 401; *Vasquez v. State,* 990 P.2d 476, 488 (Wyo. 1999). "An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." *Campbell v. State,* 2004 WY 106, ¶ 12, 97 P.3d 781, 784 (Wyo.2004). The detention of a driver and his vehicle must only be for a period of time reasonably necessary to complete routine matters. *Id.* We must consider whether the detention of Mr. Johnson was reasonable in light of the circumstances.

[¶ 11] Mr. Johnson does not contest the validity of the initial traffic stop. His claim is that once he was issued the citation, he should have been permitted to retrieve his belongings and allowed to leave. We have previously held that once a driver "has produced a valid driver's license and proof that he is entitled to operate the vehicle, he must be allowed to proceed without further delay." *Campbell,* ¶ 12, 97 P.3d at 785. However, in the course of this traffic stop, Trooper Dyer discovered that Mr. Johnson was an unauthorized driver of the rental car. At that point, it became necessary to detain Mr. Johnson while the rental company was contacted. *See Lindsay v. State,* 2005 WY 34, ¶ 25, 108 P.3d 852, 859 (Wyo.2005) (finding that the investigation of the potential unauthorized use of a rental vehicle was a reasonably sufficient reason to continue to detain the driver after a traffic stop).

[¶ 12] Under the circumstances, we also find the length of the detention was not unreasonable. The entire stop took forty minutes—twenty minutes of which were related to the impoundment and search of the vehicle. Of those twenty minutes, seven minutes expired while Trooper Dyer waited to hear how the rental company wished to handle the situation. Another five of those minutes were spent explaining to Mr. John-son why the impoundment was necessary and the Wyoming Highway Patrol's policy on inventory searches. The remaining time was spent conducting the inventory. *Compare Lindsay,* ¶ 25, 108 P.3d at 859 (one hour and sixteen minute detention found reasonable to permit the officers to investigate the possible unauthorized use of a rental vehicle).

[¶ 13] We disagree with Mr. Johnson that reasonable suspicion or probable cause was required to justify an inventory of the items in the vehicle. Inventory searches are a well recognized exception to the prohibition against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and article 1, § 4 of the Wyoming Constitution. *See Roose v. State,* 759 P.2d 478, 481 (Wyo.1988). "The requirement for a warrant is excused because probable cause is irrelevant when a search is undertaken for the purpose of an inventory rather than for an investigation." *Id.* at 482. *See also Williams v. State,* 557 P.2d 135, 139 (Wyo.1976) (stating that "probable cause, as it is usually required, is not necessary for an inventory search."). This is so because a "standardized inventory search is a routine, non-criminal administrative caretaking function." *U.S. v. Hall,* 391 F.Supp.2d 760, 766 (Dist.Iowa 2005).

[¶ 14] Mr. Johnson's contention that his baggage should have been released to him prior to the inventory, if taken to its logical conclusion, would defeat the purpose for inventory searches. Inventory searches serve to protect the owner's property while it remains in police custody; protect police against claims or disputes over lost or stolen property; and protect the police from potential danger. *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Inventory searches of impounded vehicles are not unreasonable if conducted pursuant to standardized police procedures. *See Perry v. State,* 927 P.2d 1158, 1166 (Wyo. 1996); *Vargas–Rocha v. State,* 891 P.2d 763, 767 (Wyo.1995).

[¶ 15] The Wyoming Highway Patrol has a standardized policy which states in pertinent part:

Any time a Trooper takes charge of a vehicle, he/she is responsible for the safety of the contents, to a reasonable degree. A property inventory is necessary to confirm the presence and condition of personal property within the vehicle.

When a vehicle is towed to a place of safekeeping or a *Trooper takes charge of a vehicle for any reason,* the vehicle and contents shall be inventoried and recorded on the proper form. **The inventory shall also include the inspection of closed and sealed containers.**

(Second emphasis added.) This policy was introduced at the suppression hearing in conjunction with testimony from Trooper Dyer concerning the policy. The policy was explained to Mr. Johnson prior to the initiation of the inventory search. Mr. Johnson does not contend that the policy itself was unreasonable or ambiguous or that Trooper Dyer failed to follow standardized procedures.

[¶ 16] Mr. Johnson did not request his belongings prior to the inventory search. Even if he had, we find Trooper Dyer was not required to provide them until after the contents were inventoried. Pursuant to the Wyoming Highway Patrol's policy, once a Trooper takes control of a vehicle, he or she is responsible for the safety of its contents. Trooper Dyer took control of the vehicle upon determining that Mr. Johnson was an unauthorized driver. At that point, Trooper Dyer was required to conduct the inventory. Trooper Dyer had no way of knowing whether the contents in the car belonged to Mr. Johnson or a third party. By taking an inventory of the items prior to releasing them, Trooper Dyer was protecting against future claims. Trooper Dyer also protected himself from the possibility of hidden weapons that Mr. Johnson would have acquired if the baggage was returned to him prior to inspection and inventory.

[¶ 17] In sum, we find that Mr. Johnson was not unreasonably detained during the traffic stop. Due to the non-investigatory

nature of the inventory, individualized suspicion was not required for Trooper Dyer to temporarily keep Mr. Johnson's belongings with the vehicle until the inventory was concluded. Furthermore, in order to fulfill the purposes behind inventory searches, it is reasonable to conduct an inventory before releasing any items from an impounded vehicle. As a result, the district court did not err by denying the motion to suppress on this issue.

### *Closed Container Searches*

[¶ 18] Mr. Johnson contends that even if his belongings were properly included in the search, article 1, § 4 of the Wyoming Constitution [1] prohibits the opening of closed containers during an inventory. In making his contention, Mr. Johnson acknowledges that this Court has "long recognized the doctrine of inventory searches." He concedes that under the Fourth Amendment, a bright line rule permits inventory searches of closed containers, if conducted in good faith pursuant to standardized police policy, and the search is not a ruse for the general rummaging for criminal evidence. *See Opperman,* 428 U.S. at 369, 96 S.Ct. 3092; *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *Florida v. Wells,* 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). This bright line rule exists under the Fourth Amendment because "a single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *Bertine,* 479 U.S. at 375, 107 S.Ct. 738.

[¶ 19] We recently provided a general overview for conducting a state constitutional analysis in *O'Boyle,* ¶ 23, 117 P.3d at 408. We reiterated that we use six *"non-exclusive neutral criteria"* for consideration in analyzing a claim under our state constitution: 1) the textual language of the provisions; 2) differences in the texts; 3) constitutional history; 4) preexisting state law; 5) structural

---

1. Article 1, § 4 of the Wyoming Constitution provides:

    **§ 4. Security against search and seizure.**

    The right of the people to be secure in their persons, houses, papers and effects against un-

reasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

differences; and 6) matters of particular state or local concern. *Id.*, ¶ 24, 117 P.3d at 408. *See also Saldana v. State,* 846 P.2d 604, 622 (Wyo.1993).

[¶ 20] For his analysis under the foregoing factors, Mr. Johnson first points to our discussion in *O'Boyle* where we found that the first three criteria are of little assistance. *O'Boyle,* ¶ 24, 117 P.3d at 408–409. We stated that with the exception of "the affidavit requirement for search warrants, the text of Wyoming's search and seizure provision is substantially the same as the Fourth Amendment." *Id.* No further discussion of those factors is necessary. Factor four requires an examination of preexisting state law. Wyoming precedent dating back as early as 1976 has permitted the opening of closed containers during inventory searches. *See, e.g., Williams,* 557 P.2d at 139; *Roose,* 759 P.2d at 483; *Vargas–Rocha,* 891 P.2d at 767; *Perry,* 927 P.2d at 1165–66. Mr. Johnson does not identify any preexisting state law proscribing the opening of closed containers during an inventory search. Mr. Johnson provides no analysis under the fifth factor. As a result, our review is limited to factor six— matters of particular state or local concern.

[¶ 21] Mr. Johnson refers to our discussion in *O'Boyle* where we found that drug interdiction efforts along Interstate 80 affect an untold number of both interstate and intrastate travelers. *O'Boyle,* ¶ 33, 117 P.3d at 411. Mr. Johnson relies on this discussion to support his contention that permitting police to conduct searches without probable cause or reasonable suspicion of wrongdoing will have a negative impact on tourism. To this effect he states: "If too many people have the uncomfortable and embarrassing experience of having a law enforcement officer rummage through their private belongings, obviously fewer people will choose to drive through Wyoming and spend their money while on vacation."

[¶ 22] Unlike the situation in *O'Boyle,* we have concluded that the scope of this traffic stop was reasonable. Mr. Johnson was initially pulled over for speeding. After reviewing Mr. Johnson's driver's license and the rental agreement, Trooper Dyer detained Mr. Johnson to investigate his possible unauthorized use of the rental car. Mr. Johnson's concerns relating to a negative impact on tourism are unjustified.

[¶ 23] In addition to the foregoing factors, Mr. Johnson asks us to consider the precedent of Montana and Alaska that prohibits the examination of closed containers during inventories. *See, e.g., State v. Sawyer,* 174 Mont. 512, 571 P.2d 1131 (1977), *overruled on other grounds by State v. Long,* 216 Mont. 65, 700 P.2d 153 (1985); *State v. Daniel,* 589 P.2d 408 (Alaska 1979). He claims that it makes sense to follow that precedent because our constitution is made up of a patchwork of provisions borrowed from western states. Because these states have interpreted their constitutions as prohibiting the opening of closed containers, Mr. Johnson urges this Court to follow suit. We decline to do so. Our constitutional provisions were borrowed from many western states including Idaho, North Dakota and South Dakota. *See, e.g.,* Richard Kenneth Prien, *The Background of the Wyoming Constitution* § 4, at 41 (1956); T.A. Larson, *History of Wyoming* 247 (1990). Those states permit the opening of closed containers during inventory searches authorized under standardized policies. *See State v. Owen,* — Idaho —, — P.3d —, 2006 WL 931690, 2006 Ida.App. LEXIS 40 (Idaho Ct. App.2006); *State v. Bray,* 122 Idaho 375, 834 P.2d 892 (Ct.App.1992); *State v. Gregg,* 615 N.W.2d 515 (N.D.2000); *State v. Kunkel,* 455 N.W.2d 208, 211 (N.D.1990) (citing *State v. Muralt,* 376 N.W.2d 25 (N.D.1985)); *State v. Flittie,* 425 N.W.2d 1, 4–6 (S.D.1988). This additional consideration is insufficient to warrant an expansion of the protections provided by the federal constitution.

[¶ 24] Upon conducting a state constitutional analysis in this case, we find that the scope of the protection provided by the Wyoming Constitution is the "same as and parallel to" that provided by the federal constitution. *O'Boyle,* ¶ 23, 117 P.3d at 408. Consonant with the Fourth Amendment, the opening of closed containers during an inventory search is permissible if conducted in good faith, pursuant to a standardized police policy, and as long as the search is not a ruse for general rummaging for evidence of

a crime. *See Bertine,* 479 U.S. at 374, 107 S.Ct. 738; *Opperman,* 428 U.S. at 369, 96 S.Ct. 3092. Our prior precedent has permitted inventory searches and the opening of closed containers during those searches. *See, e.g., Williams,* 557 P.2d at 139; *Roose,* 759 P.2d at 483; *Vargas–Rocha,* 891 P.2d at 767; *Perry,* 927 P.2d at 1165–66. Mr. Johnson has provided us no reason to depart from our prior holdings.

### CONCLUSION

[¶ 25] Mr. Johnson does not contend that Trooper Dyer failed to act in good faith or that he failed to follow the standardized policy concerning inventory searches. Inventory searches serve to protect the owner's property while it remains in police custody; protect police against claims or disputes over lost or stolen property; and protect the police from potential danger. *Opperman,* 428 U.S. at 369, 96 S.Ct. 3092. An inventory search that does not include all of the property within an impounded vehicle undermines the purposes for the inventory. Under these circumstances, the district court properly denied Mr. Johnson's motion to suppress.

[¶ 26] Affirmed.