# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 103

APRIL TERM, A.D. 2013

*August 29, 2013*

RALPH LAVERNE
HUNNICUTT-CARTER,

**Appellant**
**(Defendant),**

**v.**                                                    S-12-0271

**THE STATE OF WYOMING,**

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Campbell County*
*The Honorable Dan R. Price II, Judge*

*Representing Appellant:*
Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel; Wyoming Public Defender Program. Argument by Mr. Westling.

*Representing Appellee:*
Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Prof. Darrell D. Jackson, Faculty Director; Emily N. Thomas, Student Director; and Courtney Gilbert, Student Intern, of the Prosecution Assistance Clinic. Argument by Ms. Gilbert.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:** **This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Appellant Ralph Laverne Hunnicutt-Carter entered a conditional plea to a charge of felony possession of methamphetamine, thereby reserving the right to appeal the district court's denial of his motion to suppress the results of a vehicle inventory which yielded the methamphetamine. Appellant contends that impoundment of the vehicle was unnecessary under the circumstances, and that the search was conducted in bad faith. He also claims that police officers should be required to inquire into less intrusive means of safeguarding a vehicle before inventorying one in anticipation of impoundment.

[¶2]    We hold that inventory of a vehicle's contents pending impoundment is constitutional when it is authorized by statute or when it is conducted pursuant to the general policy of a law enforcement agency. In this case, a state trooper had both a statutory basis to impound a vehicle whose driver had been arrested, and he was also required to inventory the vehicle's contents before impounding it by a general Wyoming Highway Patrol policy. We also find that the district court's ruling that the trooper acted in good faith is supported by the record and is not therefore clearly erroneous. Consequently, we affirm.

## ISSUE

[¶3]    Did the district court err in denying Appellant's motion to suppress the results of an inventory search preceding the planned impoundment of a vehicle but after its driver had been arrested?

## FACTS

[¶4]    Shortly after midnight on April 5, 2012, Highway Patrol Trooper Scott Templeton observed a Chevrolet Cavalier which appeared to be travelling above the posted speed limit on Highway 51 outside of Gillette, Wyoming. He confirmed by radar that the car was speeding at 74 miles per hour in a 55 mile per hour zone and made a traffic stop. Hunnicutt-Carter was alone in the vehicle. He had no driver's license or proof of insurance, but provided his vehicle registration, and told the officer his name and date of birth.

[¶5]    Templeton left Hunnicut-Carter in his vehicle and contacted his dispatcher from his patrol car. The dispatcher advised him that Hunnicutt-Carter had an outstanding warrant from Campbell County.[1] Templeton confirmed the validity of the warrant with

---

[1] The record of the hearing does not reflect the offense which led to issuance of the warrant. The presentence investigation report in this case is unclear as to this issue as well, although it may have been driving with a suspended license.

1

the dispatcher, arrested Hunnicutt-Carter, and placed him in the patrol car. According to the police report, only eleven minutes transpired between the initial stop and the arrest.

[¶6]    Trooper Templeton planned to impound the vehicle as required by Highway Patrol policy, and pursuant to that policy he conducted what was intended to be a pre-impoundment inventory of the vehicle. He discovered a small plastic bag of a crystalline substance he suspected to be methamphetamine in the driver's console. He also found an unlocked strongbox which contained five more baggies of suspected methamphetamine, a syringe, a glass pipe, a digital scale, several cotton swabs, and a spoon in the front passenger seat area. A field test indicated that the baggies in fact contained crystal methamphetamine. This was later confirmed by laboratory testing.

[¶7]    Hunnicutt-Carter's father arrived to take possession of the vehicle shortly after Trooper Templeton completed the inventory which revealed the drugs and paraphernalia, but before a tow truck arrived to take the vehicle to an impoundment yard. Hunnicutt-Carter had called his father to ask him to pick the vehicle up while Trooper Templeton was in his patrol car checking for warrants. Trooper Templeton released the vehicle to Appellant's father, and he drove it away. Appellant was then charged with possession of three or more grams of methamphetamine, a felony under Wyoming Statute § 35-7-1031(c)(ii).

[¶8]    Appellant pled not guilty and filed a motion to suppress the methamphetamine as the product of an illegal search. He claimed that a warrantless vehicle search was unreasonable under the circumstances, and that an inventory was unnecessary because his father was available to take the vehicle.

[¶9]    At the suppression hearing, the State called Trooper Templeton as its only witness. He testified that the Wyoming Highway Patrol (WHP) has a policy requiring impoundment of vehicles when no one is available to drive the vehicle after an arrest, and that the policy also requires troopers to inventory the contents of vehicles to be impounded before releasing them to a towing company or any other person or entity.

> That policy provides that we will do an inventory of the vehicle, its contents, prep it for being towed.
>
> . . .
>
> The procedure is to go completely through the vehicle either by audio or write it down what's in the vehicle.
>
> . . .

2

> [W]e go through there [the vehicle], we talk about anything of value, any loose items, things like that that are in the vehicle that could be taken from the vehicle.

Trooper Templeton stated that the purpose of an inventory is to "hold everyone accountable when they take possession of the vehicle."

[¶10] Trooper Templeton testified that no one was available to take the car until after the inventory. He indicated that he did not know that Appellant's father was on his way to pick up the car when he performed the inventory. He testified that he was simply complying with the WHP's established policy for inventorying vehicles when he discovered the methamphetamine and assorted paraphernalia.

[¶11] Cross-examination elicited that Trooper Templeton saw that Appellant was on his phone while his license was being checked through dispatch, and that he heard the phone ringing after the arrest. However, the trooper also testified that Hunnicutt-Carter did not tell him that his father was coming to get the car. He indicated that the arrest was based solely on the outstanding warrant, and that he did not arrest Appellant for speeding or other traffic violations. He testified that he conducted a routine inventory, and that it was not intended to discover evidence related to Appellant's outstanding warrant.

[¶12] Defense counsel asked, "Now, don't you have to impound the car before you have the right to do an inventory search?" Trooper Templeton responded "No, sir." He clarified that once an arrest is made, the arrestee's vehicle is technically in his possession under the WHP inventory policy. At that point, he is required by the policy to conduct an inventory before he can release the vehicle to anyone but the driver or a passenger.

[¶13] Trooper Templeton admitted that the vehicle was not stolen, abandoned, or a hazard to other drivers. It was parked approximately six feet from the roadway, and it could have been moved further from traffic. He believed that the car might have been safe for the night, but reiterated that Highway Patrol policy does not permit troopers to leave cars on the side of the road when an arrest is made. He also admitted that the car was never impounded. The court questioned Trooper Templeton on the meaning of the word "impound," and he clarified, "We did not impound the car, take it, have a tow truck come and take it and put it in our safe keep."

[¶14] The district court held that Trooper Templeton conducted an inventory in good faith pursuant to a valid inventory policy, and denied the motion to suppress. Hunnicutt-Carter entered into a conditional plea agreement, pleading no contest to the felony possession charge, but reserving his right to appeal the denial of his motion to suppress. *See* W.R.Cr.P. 11(a)(2) (defendant may enter a conditional plea and appeal an adverse pretrial determination subject to certain conditions). The district court accepted

Appellant's conditional plea and sentenced him to a term of three to five years of incarceration. This appeal was timely perfected.

## DISCUSSION

[¶15] The Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Wyo. Const. art. 1 § 4; *see, e.g., Sen v. State*, 2013 WY 47, ¶ 26, 301 P.3d 106, 117 (Wyo. 2013); *Owens v. State*, 2012 WY 14, ¶ 10, 269 P.3d 1093, 1096 (Wyo. 2012); *Hageman v. Goshen Cnty. Sch. Dist. No. 1*, 2011 WY 91, ¶ 6, 256 P.3d 487, 492 (Wyo. 2011). Under either provision, "searches and seizures made without a warrant or outside the judicial process are per se unreasonable unless they fall within one of the recognized exceptions." *Tucker v. State*, 2009 WY 107, ¶ 22, 214 P.3d 236, 243 (Wyo. 2009) (citing *Callaway v. State*, 954 P.2d 1365, 1369 (Wyo. 1998)); *see also Illinois v. McArthur*, 531 U.S. 326, 330, 121 S. Ct. 946, 949, 148 L. Ed. 2d 838 (2001) ("When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable."); *Sen*, ¶ 26, 301 P.3d at 117 ("Warrantless searches and seizures are presumptively unreasonable unless they are justified by probable cause and an established exception to the warrant requirement.").

[¶16] Vehicle inventories are an exception to the general warrant requirement. *Johnson v. State*, 2006 WY 79, ¶ 13, 137 P.3d 903, 906 (Wyo. 2006) (citing *Roose v. State*, 759 P.2d 478, 481 (Wyo. 1988)). The inventory exception allows police officers to inventory the contents of a vehicle in the possession of law enforcement if the inventory "is conducted pursuant to a standardized police procedure." *See Vargas-Rocha v. State*, 891 P.2d 763, 767 (Wyo. 1995) (citing *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S. Ct. 3092, 3100, 49 L. Ed. 2d 1000 (1976)).

[¶17] Probable cause is unnecessary to conduct an inventory, but the inventory cannot be a bad faith pretext for general investigatory rummaging. *Johnson*, ¶ 13, 137 P.3d at 906 (citing *Roose*, 759 P.2d at 482); *Williams v. State*, 557 P.2d 135, 139 (Wyo. 1976); *see also Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635, 109 L. Ed. 2d 1 (1990). Inventorying a vehicle serves three purposes–it protects the vehicle itself from theft or vandalism, it protects the police and the towing company from danger, and it protects the police and towing company from claims or disputes over property claimed to have been lost or stolen after law enforcement took control of the vehicle. *Johnson*, ¶ 14, 137 P.3d at 906 (citing *Opperman*, 428 U.S. at 369, 96 S. Ct. at 3097).

[¶18] Appellant first contends that the inventory was conducted in bad faith because impounding the vehicle was unnecessary under the circumstances. In support of this argument, he suggests that police officers should be required to inquire into less intrusive

4

means before inventorying a vehicle for impoundment. If Trooper Templeton had done so in this case, he would presumably have learned that Appellant's father was on his way to pick up the vehicle. Appellant claims that an inquiry would have proven the inventory unnecessary, which he claims would require exclusion of the evidence.

[¶19] In *Opperman*, the United States Supreme Court stated that automobiles must be in "lawful police custody" before an inventory search takes place. 428 U.S. at 373, 96 S. Ct. at 3099; *see also Woodford v. State*, 752 N.E.2d 1278, 1281 (Ind. 2001) ("In determining the propriety of an inventory search, the threshold question is whether the impoundment itself was proper."). The district court found that the WHP had custody of the vehicle after Appellant's arrest, and that Trooper Templeton did not act in bad faith because he inventoried the vehicle in anticipation of impounding it. The court also observed that no one was available to take possession of the car after Appellant was arrested, and that the inventory was complete by the time Appellant's father arrived. The court therefore concluded that the inventory was appropriate and done in good faith under the circumstances.

[¶20] We review the district court's factual findings on a motion to suppress for clear error. We defer to those findings and view the evidence in the light most favorable to the prevailing party because the district court is in the best position to weigh the evidence, assess the credibility of witnesses, and make the necessary inferences, deductions, and conclusions. However, "we review the ultimate determination regarding the constitutionality of a particular search or seizure *de novo*." *Sen*, ¶ 25, 301 P.3d at 117 (citing *Owens*, ¶ 8, 269 P.3d at 1095). *See also Lovato v. State*, 2010 WY 38, ¶ 11, 228 P.3d 55, 57–58 (Wyo. 2010) (quoting *Yoeuth v. State*, 2009 WY 61, ¶ 16, 206 P.3d 1278, 1282 (Wyo. 2009)); *Meadows v. State*, 2003 WY 37, ¶ 23, 65 P.3d 33, 40 (Wyo. 2003) (quoting *Gehnert v. State*, 956 P.2d 359, 362 (Wyo. 1998)).

[¶21] The district court believed Trooper Templeton's testimony that he did not know that Appellant's father was coming to retrieve his automobile, that a general policy required that the vehicle be inventoried and then towed, and it therefore concluded that the officer acted in good faith. There was nothing incredible about the testimony, and it was certainly not erroneous for the district judge to believe it.

[¶22] Appellant contends, however, that this Court should adopt a rule which would have required Trooper Templeton to inquire into less intrusive means of safeguarding a vehicle, directing us to *State v. Branstetter*, 199 P.3d 1272 (Kan. App. 2009) in support of this proposition:

> If the owner, operator, or person in charge of the vehicle is readily available to make a determination as to the disposition of the vehicle then he may do so. If the person responsible for the vehicle desires that the vehicle be left lawfully parked

upon the streets or that it be turned over to some other person's custody, then, absent some other lawful reason for impounding the vehicle, his or her wishes must be followed. Only when a vehicle is found illegally parked and unattended, or where the person responsible for its possession is unable . . . or unwilling to instruct the arresting officers as to the vehicle's disposition or some other legal reasonable justifying impoundment exists should the officers assume control over the vehicle.

*Id.* at 1276 (quoting *State v. Fortune*, 689 P.2d 1196, 1203 (Kan. 1984)) (emphasis omitted). *See also United States v. Abbott*, 584 F. Supp. 442, 448 (W.D. Pa. 1984) ("[S]ince an inventory search is to protect the owner's property, the owner, whenever available, should be given the opportunity to determine how he wants his property secured."); *State v. Rome*, 354 So. 2d 504, 506 (La. 1978) (inventory search not sufficiently restricted in scope where officer did not attempt to ascertain wishes of driver).

[¶23] The United States Supreme Court rejected a similar argument in *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987), stating that "while giving [the vehicle owner] an opportunity to make alternative arrangements would undoubtedly have been possible . . . [t]he reasonableness of particular governmental activity does not necessarily or invariably turn on the existence of alternative less intrusive means." *Id.* at 373–74, 107 S. Ct. at 742 (quoting *Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S. Ct. 2605, 2610, 77 L. Ed. 2d 65 (1983) (internal quotation marks omitted). *Accord United States v. Davis*, 882 F.2d 1334, 1339 (8th Cir. 1989); *People v. Clark*, 357 N.E.2d 798, 800–01 (Ill. 1976). *See also Johnson*, ¶ 17, 137 P.3d at 907 ("[I]n order to fulfill the purposes behind inventory searches, it is reasonable to conduct an inventory before releasing any items from an impounded vehicle.").

[¶24] We also decline to adopt a rule which would require police officers to explore alternative means of safeguarding a vehicle before beginning the process of impounding it, and instead hold that "[a]n impoundment is warranted when it is part of routine administrative caretaking functions of the police . . . or when it is authorized by state statute." *Woodford*, 752 N.E.2d at 1281 (citations omitted) (internal quotation marks omitted). We believe that "[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *Bertine*, 479 U.S. at 375, 107 S. Ct. at 743 (quoting *Lafayette*, 462 U.S. at 648, 103 S. Ct. at 2610).

[¶25] Appellant further contends that Trooper Templeton was not authorized by statute to impound the vehicle, claiming that Wyoming Statute § 31-13-104 "clearly allows for vehicles to be left on a roadway if not abandoned." In addition, he claims that Trooper

Templeton did not make a written inventory of the vehicle's contents as required by the policy, actually referring to the contents of a written policy in one of this Court's prior decisions.

[¶26] Section 31-5-508(c)(iii) allows police officers to "remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway when . . . the person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a proper judge without unnecessary delay." Wyo. Stat. Ann. § 31-5-508(c)(iii) (LexisNexis 2013). Trooper Templeton arrested Appellant on the outstanding warrant, and W.R.Cr.P. 5(a) required that Appellant be brought before a judicial officer without unnecessary delay. The statute therefore allowed Trooper Templeton to take possession of Appellant's vehicle and inventory it in anticipation of actual towing and impoundment.[2]

[¶27] As already discussed, the record also reflects that Trooper Templeton was following a Highway Patrol policy which was the sort of established police procedure or protocol referred to in the case law. The prosecutor did not introduce the inventory policy itself at the suppression hearing. However, Trooper Templeton testified that the policy requires him to take possession of a vehicle operated by someone he arrests, and to conduct an inventory, unless he can immediately release the vehicle to a passenger. The policy then requires a written or recorded audio inventory of the vehicle's contents. Trooper Templeton testified that he inventoried Appellant's vehicle on video and that the contents of the video are in fact committed to writing in his report of the encounter.[3]

[¶28] This testimony provided an adequate basis for the district court to determine the requirements of the WHP inventory policy and that Trooper Templeton complied with it. *See Perry v. State*, 927 P.2d 1158, 1165 (Wyo. 1996) ("We have not required that

---

[2] *See, e.g.*, *People v. Nash*, 947 N.E.2d 350, 364 (Ill. Ct. App. 2 Dist. 2011) (inventory search proper because impoundment of vehicle mandated by traffic laws); *People v. Turner*, 91 A.D.2d 646, 646–47 (N.Y. App. Div. 1982) (inventory search authorized because unregistered vehicle was validly impounded); *Diomampo v. State*, 185 P.3d 1031, 1042–43 (Nev. 2008) (inventory search justified because impoundment of vehicle required under two separate portions of Nevada's traffic laws); 61A C.J.S. *Motor Vehicles* § 1527 (2012) (impoundment of vehicle authorized where officer required to arrest driver and take the person immediately before a magistrate); *see also Opperman*, 428 U.S. at 369, 96 S. Ct. at 3097 ("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.").

[3] The WHP inventory policy evidently required a written inventory receipt in the past. *See Shaw v. State*, 2009 WY 18, ¶ 13, 201 P.3d 1108, 1111 (Wyo. 2009) ("The trooper explained that Wyoming Highway Patrol policy requires that, whenever a vehicle is to be towed and impounded, the vehicle must be inventoried and troopers must complete a Vehicle Inventory Receipt."); *Johnson*, ¶ 15, 137 P.3d at 907 (WHP inventory policy stated that "the vehicle and contents shall be inventoried and recorded on the proper form."). However, Trooper Templeton testified that the policy now permits electronic recordings of a vehicle's contents. This change is hardly surprising in light of the availability of ICOP and similar recording programs used by law enforcement officers across the country.

7

standard police procedures with respect to impoundment and inventory searches be in writing. Instead, we have accepted testimony by police officers of the standards and their testimony that the appropriate procedures were followed in a particular situation.") (citations omitted). The inventory policy does not permit "so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime," and it in fact vests very little discretion in the individual officer. *See Wells*, 495 U.S. at 4, 110 S. Ct. at 1635 (quoting *Bertine*, 479 U.S. at 376, 107 S. Ct. at 743 (Blackmun, J., concurring)) (internal quotation marks omitted).

[¶29] In summary, we agree with the district court that the untimely arrival of Hunnicutt-Carter's father is simply an instance of bad timing from Appellant's perspective, and that the inventory was not a ruse to allow Trooper Templeton to rummage through the vehicle in search of contraband. *Cf. United States v. Beal*, 430 F.3d 950, 954 (8th Cir. 2005) (inventory search reasonable where sole occupant of vehicle arrested, even though the registered owner appeared after the search to claim the vehicle before actual impoundment). The district court did not therefore err in finding that a good-faith inventory took place pursuant to a valid policy.

## CONCLUSION

[¶30] The district court did not err in denying Appellant's motion to suppress, and the judgment and sentence of the district court are therefore affirmed.