(199 P.3d 1272)
No. 98,884

STATE OF KANSAS, *Appellee,* v. JASON A. BRANSTETTER, *Appellant.*

Opinion filed January 23, 2009.

*Star Jones,* legal intern, of Washburn University School of Law, and *Randall L. Hodgkinson,* of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon,* assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Stephen N. Six,* attorney general, for appellee.

Before CAPLINGER, P.J., LEBEN, J., and BUKATY, S.J.

CAPLINGER, J.: Jason Branstetter appeals his convictions of one count of possession of methamphetamine, K.S.A. 2007 Supp. 65-4160(a), and one count of possession of a controlled substance without a tax stamp affixed, K.S.A. 79-5204. Branstetter argues that law enforcement officers lacked statutory authority or other reasonable grounds to impound his vehicle following his arrest and the district court therefore erred in denying his motion to suppress evidence discovered during the inventory search which followed impoundment.

Because the vehicle operated by the defendant was not unattended, illegally parked, or obstructing traffic, and the officers failed to consult the defendant or attempt to contact the registered owner regarding disposition, we conclude the impoundment of the vehicle was not based on reasonable grounds under the totality of the circumstances and the subsequent inventory search was unlawful.

*Factual and procedural background*

Around 1:10 a.m. on December 15, 2005, Sedgwick County Sheriff's Deputy Tracy Spreier spotted Branstetter walking out of a Wichita convenience store at 47th Street South and Seneca and saw Branstetter's vehicle in the store's parking lot. Deputy Spreier recognized Branstetter based upon multiple prior contacts and knew Branstetter had several outstanding warrants. Spreier drove through the convenience store parking lot to confirm his identification and noticed a woman, who he later identified as Robin Dodd, in the passenger seat of Branstetter's vehicle.

Spreier drove his patrol vehicle to a nearby intersection where he waited until Branstetter's vehicle left the parking lot. Spreier then initiated a traffic stop based solely on the outstanding warrants, pulling Branstetter over "roughly" in the 5000 block of South Seneca in Wichita.

Spreier obtained Branstetter's identification and registration papers, which showed the vehicle was registered to Kenneth Robertson. After confirming Branstetter's outstanding warrants, Spreier ordered him out of the vehicle. Spreier also checked Dodd's identification and found no evidence of outstanding war-

rants. After a second officer arrived, Spreier placed Branstetter into custody. Because the vehicle's registered owner was not present, Spreier impounded the vehicle without consulting Branstetter regarding its disposition, pursuant to sheriff's department policy.

A short time later, the deputies conducted an inventory search of the vehicle along with the police K-9 unit, which Spreier requested based upon his "belief that there was a good possibility that narcotics were in that vehicle, as well." Officers discovered methamphetamine in the center console cupholder and behind the driver's seat.

Around 1:40 a.m., Spreier read Branstetter his *Miranda* rights, and Branstetter indicated he wished to terminate his conversation with Spreier. At approximately 2:05 a.m., Branstetter asked the officers to adjust his handcuffs. When Spreier removed Branstetter from the patrol vehicle to adjust the cuffs, Branstetter asked why Dodd had been taken into custody. Deputy Spreier explained that Branstetter's invocation of his *Miranda* rights prohibited police from discussing ownership of the narcotics and required that both of the vehicle's occupants be taken into custody. Branstetter then said he had a drug problem and admitted possession of the methamphetamine.

Branstetter was charged with one count of possession of methamphetamine under K.S.A. 2007 Supp. 65-4160(a) and one count of possession of a controlled substance without a tax stamp affixed under K.S.A. 79-5204.

At Branstetter's bench trial, he moved to suppress evidence found in the search and the statements he made admitting ownership of the methamphetamine. The trial court denied both motions and found Branstetter guilty on both counts.

*Discussion*

On appeal, Branstetter argues the district court erred in denying his motion to suppress evidence because the deputies lacked statutory authority or other reasonable grounds to impound the vehicle. Additionally, Branstetter argues the deputies exceeded the scope of the exception permitting searches incident to lawful arrest.

We apply a bifurcated standard of review to the district court's decision on a motion to suppress evidence. Without reweighing the evidence, we review the district court's findings to determine whether they are supported by substantial competent evidence. We review the ultimate legal conclusion regarding the suppression of evidence using a de novo standard. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007). When the material facts are undisputed, the question of whether to suppress is a question of law over which we have unlimited review. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006).

### *Impoundment and Inventory Search*

Branstetter first argues his vehicle was improperly impounded because the deputies lacked explicit authority or otherwise reasonable grounds to impound the vehicle. And, because an inventory search is permitted only when officers have gained lawful custody of the vehicle, Branstetter contends the inventory search was unlawful and district court erred in refusing to suppress evidence found in the search.

Generally, a search and seizure of evidence obtained without a warrant is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *State v. Shelton*, 278 Kan. 287, 294, 93 P.3d 1200 (2004). Inventory searches of lawfully impounded vehicles, conducted pursuant to standardized policy procedures, have long been recognized as one of these exceptions. 278 Kan. at 294; see *South Dakota v. Opperman*, 428 U.S. 364, 372, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976). Inventory searches serve three purposes: " 'the protection of the owner's property while it remains in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger. [Citation omitted.]' " *Shelton*, 278 Kan. at 294; see *Opperman*, 428 U.S. at 369. An officer searching a car after a lawful impoundment may conduct a "warrantless inventory search of the personal property within the vehicle, including the glove box and trunk, when the same may be accomplished without damage to the vehicle or its contents." *State*

*v. Fortune*, 236 Kan. 248, 257, 689 P. 2d 1196 (1984); see *State v. Canaan,* 265 Kan. 835, 843-44, 964 P.2d 681 (1998).

In order to impound a vehicle, the police must have authority by statute or ordinance, and if no such authority exists, impoundment is appropriate only if the State establishes "reasonable grounds" for the impoundment. *State v. Teeter*, 249 Kan. 548, 550-51, 819 P.2d 651 (1991).

Here, although the State argues that Deputy Spreier relied upon sheriff's policy when impounding the vehicle, the State does not suggest the impoundment was authorized by statute or ordinance. Instead, the State argues that reasonable grounds existed for the impoundment, making the subsequent inventory search lawful.

The prosecution has the burden of proving an impoundment is reasonable under the totality of the circumstances. *Shelton,* 278 Kan. at 293. Although no bright-line rule specifies or limits the "reasonable grounds" for impoundment, our Supreme Court has identified six situations giving rise to reasonable grounds:

" ' "[T]he necessity for removing (1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the case of forfeiture." ' " *Teeter,* 249 Kan. at 552 (citing *State v. Boster,* 217 Kan. 618, 624, 539 P.2d 294 [1975]).

The State does not argue that any one of these factual scenarios apply here, but instead suggests the impoundment was reasonable because (1) Branstetter was "pulled over on a city street;" (2) Branstetter's arrest on outstanding warrants left the vehicle "unattended"; and (3) pursuant to "Sheriff's Department policy," Deputy Spreier could not release the vehicle to anyone other than the registered owner.

There are several flaws in the State's analysis. First, the State fails to explain the significance of its assertion that the vehicle was "pulled over on a city street." Moreover, the record is contradictory

on this point. While Deputy Spreier testified he pulled Branstetter over "in the 5000 block of South Seneca," he also indicated under cross-examination that Branstetter's vehicle was on "private property." In any event, the record contains no evidence indicating exactly where or how the vehicle was parked. The State failed to establish that the vehicle was illegally parked, was obstructing traffic, had mechanical difficulties, or any of the reasons identified by *Teeter* as providing reasonable grounds for impoundment when the vehicle also was "unattended."

The State has the burden to prove an impoundment is "reasonable" under the totality of the circumstances. The simple fact that the vehicle Branstetter was operating was pulled over on a city street or even on private property does not provide a reasonable ground for impoundment.

Moreover, even if the record supported the State's implication that the location of the vehicle presented safety or traffic concerns, the record does not support the State's assertion that the vehicle was "unattended." Rather, the vehicle's passenger, Robin Dodd, was not arrested and eventually was driven home by an officer. Further, the record reveals that the officers intentionally did not consult Branstetter or attempt to reach the vehicle's registered owner to attend to the vehicle.

The State implies that the vehicle was unattended and impoundment was reasonable, because of the sheriff's "policy" of refusing to allow anyone other than a registered owner to drive an unattended vehicle.

Again, the State's argument is flawed. First, we note that although the "policy" was generally testified to by Deputy Spreier, it was never produced. Further, while the department's "policy" is one factor to consider, it cannot simply nullify other relevant factors in the reasonableness inquiry, including the location of the vehicle, whether the vehicle is unattended, or whether the operator of the vehicle was consulted regarding disposition of the vehicle.

Branstetter points out that our Supreme Court in *State v. Fortune*, 236 Kan. 248, held that the operator of a vehicle should be given an opportunity to determine the disposition of the vehicle:

"If the owner, operator, or person in charge of the vehicle is readily available to make a determination as to the disposition of the vehicle then he may do so. If the person responsible for the vehicle desires that the vehicle be left lawfully parked upon the streets or that it be turned over to some other person's custody, then, absent some other lawful reason for impounding the vehicle, his or her wishes must be followed. *Only when a vehicle is found illegally parked and un-attended, or where the person responsible for its possession is unable . . . or unwilling to instruct the arresting officers as to the vehicle's disposition* or some other legal reasonable justifying impoundment exists should the officers assume control over the vehicle." (Emphasis added.) *Fortune*, 236 Kan. at 257.

Clearly, under the *Fortune* test, the fact that Branstetter was not the owner of the vehicle is not controlling, or even significant. Rather, *Fortune* suggested that the "owner, operator, or person in charge" of the vehicle should be given an opportunity to determine the disposition of the vehicle. The State concedes that Branstetter was not consulted regarding his wishes concerning disposition of the vehicle and does not suggest that Branstetter was unable to do so.

The State correctly points out, however, that in *State v. Shelton,* 278 Kan. at 293, the court distinguished *Teeter* and clarified that a competent driver need not be given an opportunity to arrange for the disposal or removal of a vehicle to avoid impoundment. *Shelton,* 278 Kan. at 293. Rather, the court held that all that is required under the Fourth Amendment to the United States Constitution "is that the impoundment be reasonable under the totality of the circumstances." Further, the court reasoned that the officer's inquiry of the driver regarding disposition is but one of the circumstances that is considered in the court's determination of whether the impoundment is reasonable. 278 Kan. at 293.

Significantly, in *Shelton,* the defendant was not the owner of the van in which he was found asleep. Further, the van was parked in "the middle to right hand side" of a rural road near a stop sign. The vehicle was impounded because following Shelton's arrest for a revoked license in a rural area, there was no one "immediately available" to retrieve the vehicle, and it was also obstructing traffic. 278 Kan. at 288-89.

Here, the State interprets *Shelton*, when considered in conjunction with the Sheriff's department policy, to relieve Deputy Spreier

of any obligation to consult Branstetter or the registered owner about the disposition of the vehicle.

While *Shelton* made clear that there is no Fourth Amendment right to police consultation regarding the disposition of the vehicle before impoundment, the court in *Shelton* also clearly stated: "Consultation is but one factor, *although an important factor* to be considered among the totality of the circumstances in the determination of whether impoundment is reasonable." (Emphasis added.) 278 Kan. at 296.

Nor are we bound by *Shelton's* conclusion that reasonable grounds for impoundment existed even though the defendant was 'readily available' " and may have been able to suggest an alternative disposition." 278 Kan. at 296-97. Again, the *Shelton* court considered this factor in light of the totality of the circumstances, including that the defendant's arrest left his vehicle unattended, illegally parked, obstructing traffic, and not readily accessible in a rural area. 278 Kan. at 296.

The totality of the circumstances here—*i.e.*, the vehicle was not "unattended," illegally parked, or obstructing traffic—does not permit us to disregard the officer's failure to consider permitting the passenger to drive, to consult Branstetter, or to attempt to contact the registered owner regarding disposition.

Essentially, the State seeks to rely upon an unwritten and unproduced "policy" as carte blanche authority permitting the State to impound a vehicle when the registered owner is not present and the operator is arrested. The State would implement this policy without regard to (1) the wishes of the operator or the owner; (2) whether a passenger may be present to attend to the vehicle; and (3) whether the vehicle presents a safety or traffic hazard. The State's rationale would eviscerate the "reasonable grounds" test established in *Fortune* and the "totality of the circumstances" analysis espoused by *Teeter*. See *Shelton*, 278 Kan. at 301 (Beier, J., concurring) (questioning whether a "highly malleable reasonableness test adequately safeguards" expectations of privacy).

Because none of the three "reasons" offered by the State for impoundment, whether considered separately or in their totality, provided reasonable grounds for impoundment of the vehicle, the

impoundment was unlawful and the subsequent inventory search was invalid. See *Fortune*, 236 Kan. at 257.

### The Inventory Search

Finally, we note that before the trial court, the defendant questioned the lawfulness of the inventory search and suggested the purpose of the search was to investigate for other incriminating evidence. While the trial court did not specifically rule on this suggestion, we note that the facts support this argument and bolster our conclusion concerning the unlawful impoundment.

As the court noted in *Shelton*:

" '[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into "a purposeful and general means of discovering evidence of crime." ' " 278 Kan. at 299 (quoting *Florida v. Wells*, 495 U.S. 1, 4, 109 L. Ed 2d 1, 110 S. Ct. 1632 [1990]).

Significantly, the defendant in *Shelton* also argued the inventory search was a pretext to conduct an investigatory search. The court rejected this argument, concluding:

"[T]here is no evidence in the record suggesting that the officers had a hidden agenda as to the search. The officers had never come into contact with the defendant, did not recognize the van, and had no reason to suspect the defendant of hiding contraband in the van." 278 Kan. at 299-300.

In contrast, in this case, Deputy Spreier had several prior contacts with the defendant, and Spreier admitted he suspected Branstetter of having narcotics in his vehicle based on these prior contacts. In fact, Deputy Spreier called in a K-9 unit to conduct a search for narcotics at the same time the officers were conducting an inventory search. Thus, the search of Branstetter's vehicle was clearly not limited to producing an inventory of the vehicle's contents and was undertaken with an investigatory goal.

While we need not consider the lawfulness of the inventory search based on our conclusion that the impoundment was not based on reasonable grounds, the motive for and nature of the

eventual search buttresses our conclusion that the impoundment was not reasonable under the circumstances.

*Search Incident to Lawful Arrest*

Branstetter also argues the search was not a valid search incident to arrest because it was not aimed at "[d]iscovering the fruits, instrumentalities, or evidence of *the* crime." (Emphasis added.) K.S.A. 22-2501 (Furse 1995). However, we need not consider this issue as the State does not argue on appeal that the search was justified as a search incident to a lawful arrest, but only that the search was a lawful inventory search.

Reversed and remanded.