FILED
**United States Court of Appeals**
**Tenth Circuit**

**September 18, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

RICK CALDWELL; SONYA
CALDWELL,

      Plaintiffs - Appellants,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

      Defendant - Appellee.

No. 17-8078
(D.C. No. 2:16-CV-00236-SWS)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Plaintiffs appeal the decision of the district court in _Caldwell v. UNUM Life Ins._

_Co. of Am._, 271 F. Supp. 3d 1252 (D. Wyo. 2017), which rejected their claim under the

federal Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.,

that Defendant had improperly denied benefits for accidental death and dismemberment

arising from the death of Plaintiffs' son when he was thrown from the vehicle he was

driving at 74 mph on an unpaved road. Defendant relied on an exclusion in its policy for

losses "caused by, contributed to by, or resulting from . . . an attempt to commit or

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

commission of a crime." Aplt. App., Vol. 6 at 902–03. We affirm the district court for essentially the reasons set forth in its opinion. We add only two comments.

First, the district court wrote, "The term 'crime' is not ambiguous." 271 F. Supp. 3d at 1261. A little over a year later, however, the Supreme Court said, "The word 'burglary,' like the word 'crime' itself, is ambiguous." *United States v. Stitt*, 139 S. Ct. 399, 405 (2018). We would therefore be reluctant to rely on the unambiguity of the term *crime*. But the district court did not so rely. As that court noted, "'A decision denying benefits based on an interpretation of an ERISA provision survives arbitrary and capricious review so long as the interpretation is reasonable.'" 271 F. Supp. 3d at 1263 (quoting *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1193 (10th Cir. 2007), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 544 U.S. 105 (2008)). And the district court's ultimate decision was that Defendant's interpretation of its policy was reasonable.

Second, Plaintiffs' best argument is that Defendant's claims manual would treat the speeding in this case as a traffic violation not encompassed by the crime exclusion. The manual states that the exclusion "was not intended to apply to activities which would *generally* be classified as traffic violations," although it also says that driving while intoxicated would "generally" be treated as a crime under the policy. Aplt. App., Vol. 12 at 1784 (emphasis added). But we agree with the district court that the policy manual does not purport to be definitive and has substantial play in the joints. *See* 271 F. Supp. 3d at 1263–64. At the end of its discussion of the crime exclusion, the manual states in bold type: "Reminder: Each claim is unique and must be evaluated on its own merits.

2

The actual policy governing the claim must be referenced." Aplt. App., Vol. 12 at 1784. And this point is emphasized a few pages later, where the manual states that it "is not intended to offer a prescribed answer to each claim situation. Rather, such answers must be arrived at based on the specific and particular facts of the claim. Each claim is unique and must be evaluated on its own merits." *Id.* at 1789. In this context it is reasonable to ask whether the decedent's operation of his vehicle was more like (1) driving while intoxicated, which is apparently considered a species of traffic violation in Wyoming, *see Whitfield v. State*, 781 P.2d 913, 915 (Wyo. 1989) (the defendant "had accumulated numerous traffic violations which included eight speeding citations and one charge of driving under the influence"), or (2) failing to signal a lane change. More importantly, however, judicial reliance on a claims manual in this context is problematic when there is no evidence that the manual was offered to, or even available to, an insured or otherwise used in advertising or closing a sale. *Cf. Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1088–89 (8th Cir. 2009) (plan administrators are not required to disclose claims manuals to plan participants under ERISA; "the district court correctly held claims manuals are not the 'other instruments' mentioned in [29 U.S.C.] § 1024(b)(4)"). If claims manuals are, in essence, treated as part of the insurance contract, they will be

3

written with the technical precision so beloved by lawyers and defeat the purpose of providing general guidance to claims agents.  We doubt that the interests of insureds would benefit from that process.

Entered for the Court


Harris L Hartz
Circuit Judge

No. 17-8078, *Caldwell v. UNUM Life Insurance Company*

**PHILLIPS**, J., dissenting:

Is speeding a crime? UNUM Life Insurance Company of America (Unum) determined that it is—at least within the meaning of William Caldwell's insurance plan, which exempts from accidental-death-and-dismemberment coverage any "losses caused by, contributed to by, or resulting from" the actual or attempted "commission of a crime," Appellants' App. vol. 6 at 902–03, and at least when the speeding happens in Wyoming, where it is wholesale incorporated as a misdemeanor, *see* Wyo. Stat. Ann. §§ 31-5-301(b), 31-5-1201(a) (West 2018). But Rick and Sonya Caldwell (William's parents and the beneficiaries of his insurance plan) disagree with this view. In this appeal, the Caldwells argue that Unum's interpretation of the "crime" exclusion—and its resulting decision to deny their claim for accidental-death benefits—runs counter to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461.

William Caldwell's insurance plan reserves to Unum discretion to interpret the plan and to determine his eligibility for benefits. Under the Supreme Court's ERISA jurisprudence, this prevents us from disturbing Unum's interpretation of the "crime" exclusion unless that interpretation is arbitrary or capricious. Apart from this, we must consider whether disputed policy language is ambiguous, and, if it is, we must consider extrinsic evidence of the parties' intent. Here, I conclude that "crime" is ambiguous, and turn to Unum's intended meaning of "crime" as stated in its informal

policy manual. The informal policy manual says that the crime exclusion is not intended to apply to offenses generally classified as traffic offenses. And under Wyoming law, speeding is considered a traffic violation. In view of this, I would hold that Unum acted arbitrarily and capriciously in unreasonably denying accidental-death benefits under the crime exclusion. On that basis, I would reverse the district court's judgment in Unum's favor.

## BACKGROUND

In June 2015, William Caldwell, an employee of Sinclair Services Company, was speeding on Carbon County Road 605 N toward Rawlins, Wyoming. He was driving so fast that, as he navigated an S-shaped bend in the packed-dirt-and-gravel road, his car began fishtailing, and he lost control. He managed to straighten the car after the first turn in the S-bend, but not the second. As he oversteered, the car yawed, then skidded off the road and over a ditch at a 45-degree angle, hitting an embankment. The collision vaulted the car 30 feet into the air. After landing, the car slid more than 200 feet before coming to rest on its left side. William, who had not been wearing a seatbelt, was ejected—probably out the driver's-side window as the car rolled—and he died at the scene. The highway-patrol trooper who investigated the accident estimated that William had been traveling 74 miles per hour right before the crash—well over a 35-mile-per-hour posted speed limit and even the 55-mile-per-hour default speed limit for unpaved roads. *See* Wyo. Stat. Ann. § 31-5-301(b)(iv) (setting the maximum lawful speed "where the roadway is unpaved" at 55 miles per hour, and mandating that "no person shall drive . . . in excess of maximum limits").

2

Acting as his beneficiaries, William's parents submitted accidental-death and life-insurance claims to Unum, which administered the ERISA-governed group-insurance plan that Sinclair provided its employees.[1] Unum granted the Caldwells' life-insurance claim, paying them $247,351.90 in benefits. But Unum denied the Caldwells' accidental-death claim, citing the accidental-death-and-dismemberment plan's exclusion for any "accidental losses caused by, contributed to by, or resulting from[] . . . an attempt to commit or commission of a crime." Appellants' App. vol. 6 at 902–03. Unum determined that because Wyoming law treats speeding as a misdemeanor, *see* Wyo. Stat. Ann. § 31-5-1201(a), William had committed a crime within the plan's meaning. And because William's speeding had caused his fatal crash, Unum determined that the plan prevented the Caldwells from recovering accidental-death benefits.[2]

---

[1] The plan declares that Sinclair is "the Plan Administrator and named fiduciary." Appellants' App. vol. 6 at 913. But the plan also authorizes Sinclair to delegate its fiduciary duties. Consistent with that delegation (and as elaborated below), the plan reserves to Unum discretionary authority to determine eligibility for claims and to construe the plan's terms.

[2] In the facts section of their opening brief, the Caldwells contradict the district court's and the highway patrol's findings to assert that "[t]here was no speed limit sign posted for the section of road where Will died" and that "he never passed a 35 MPH sign before the accident." Appellants' Opening Br. at 8 n.8. But earlier, during the district-court proceedings, the Caldwells submitted a photograph of a 35-mile-per-hour-speed-limit sign, presumably taken somewhere along William's route. Wyoming law allows "local authorities" (such as counties) to "determine the proper maximum speed" for roads in their jurisdiction, "which may be greater or less than the maximum speed" that the law otherwise specifies. Wyo. Stat. Ann. § 31-5-303(b) (West 2018). This means that, if the Caldwells' photograph is accurate—if the Carbon County commissioners posted a 35-mile-per-hour limit on the dirt road where

In September 2016, after exhausting Unum's internal appeals process, the Caldwells filed an ERISA action against Unum, alleging that the plan entitled them to accidental-death benefits. *See* 29 U.S.C. § 1132(a)(3)(B)(ii) (entitling the beneficiaries of an ERISA-governed employee-benefit plan to enforce the plan's terms in court).

Then, in July 2017, Unum and the Caldwells each moved for summary judgment. Two months later, the district court issued a written order resolving both their motions. As both sides agreed, the court noted, the plan gave Unum discretion to interpret its terms,[3] so the deferential, arbitrary-and-capricious standard of review

---

William died—then William was traveling 39 miles per hour over the maximum lawful speed. Yet even if the Caldwells are correct that the commissioners never altered Wyoming's 55-mile-per-hour default unpaved-road speed limit, William still exceeded that limit by 19 miles per hour. *See* Wyo. Stat. Ann. § 31-5-301(b)(iv). Whether by 19 or 39 miles per hour, William was speeding.

[3] In the "Additional Summary Plan Description Information," the plan states:

> The Plan, acting through the Plan Administrator [Sinclair], delegates to Unum . . . discretionary authority to make benefit determinations under the Plan. . . . Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

Appellants' App. vol. 6 at 920. The plan's "Certificate Section" further states:

> Benefits under this plan will be paid only if Unum as the claims administrator (or its designee) decides in its discretion that you are entitled to them. Unum also has discretion to determine eligibility for benefits and to interpret the terms and conditions of the benefit plan. This reservation of discretion by Unum does not prohibit or prevent you from

(sometimes called *Firestone* deference, after the eponymous Supreme Court case) applied to Unum's denial of the Caldwells' accidental-death claim. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (holding that when an employee-benefit plan gives the plan administrator "fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," ERISA requires judicial deference to the administrator's decisions. From this, the court framed the question before it as "whether Unum's interpretation of 'crime' to include speeding for purposes of the Crime Exclusion was reasonable and made in good faith." *Caldwell v. Unum Life Ins. Co. of Am.*, 271 F. Supp. 3d 1252, 1261 (D. Wyo. 2017). The court answered yes—concluding that Unum's interpretation fell "somewhere on the continuum of reasonableness." *Id.* at 1264 (quoting *Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1254 (D. Utah 2016)). It thus upheld Unum's denial of the Caldwells' accidental-death claim, granted Unum's summary-judgment motion, and denied the Caldwells' competing motion. That same day, the court entered judgment for Unum and dismissed the Caldwells' case.

The Caldwells appealed.

---

seeking judicial review in federal or state court of Unum's claims determinations.

*Id.* at 879.

**DISCUSSION**

The Caldwells dispute the summary-judgment ruling by contesting the district court's conclusion that, considering the administrative record and the language of the accidental-death-and-dismemberment plan, Unum's interpretation of the "crime" exclusion was reasonable.[4]

## I.  Judicial Review of ERISA Claims

First, I describe the two-layered standard of review governing our analysis: one standard applicable to the district court's summary-judgment ruling, another applicable to Unum's decision to deny the Caldwells' accidental-death-benefits claim. Next, I apply that layered standard to determine whether the district court reversibly erred by ruling in Unum's favor.

### A.  Standard of Review

In an ERISA case, we review the district court's summary-judgment ruling de novo, applying the same standards that a district court would. *See LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 795 (10th Cir. 2010). In this case, the Caldwells and Unum both moved for summary judgment on the Caldwells' ERISA claim, thereby stipulating that the Caldwells' entitlement to benefits depends solely on the facts in the administrative record and that no trial is necessary. *See id.* at 796. Their motions thus

---

[4] We do not address the Caldwells' general challenge to *Firestone* deference, in which they argue (among other things) that this level of deference has "eviscerated" ERISA's purpose and its underlying insurance- and trust-law tenets. Appellants' Reply Br. at 1.

present this court—as they did the district court—with "a vehicle for deciding the case." *Id.* (quoting *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 235 (1st Cir. 2006)).

Next, we must determine (as the district court did) what standard of review applies to the case. Well-settled law instructs that our default standard of review is de novo when the beneficiaries of an ERISA-governed employee-benefit plan challenge a denial of benefits but that we must switch to the more deferential arbitrary-and-capricious standard if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115.

Here, the policy grants Unum "discretion to determine eligibility for benefits and to interpret the terms and conditions of the benefit plan." Appellants' App. vol. 6 at 879. This language triggers arbitrary-and-capricious review, because any reasonable reader would understand that Unum had thereby reserved discretion over the specific decision at issue here: whether speeding is a "crime" subject to the plan's coverage exclusion. *See Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1201 (10th Cir. 2013) (concluding that both parties agree to arbitrary-and-capricious review where the policies grant insurance company "discretion and final authority to construe and interpret the terms of the policy"); *Nance v. Sun Life Assurance Co. of Canada*, 294 F.3d 1263, 1266 (10th Cir. 2002) (emphasizing the importance of "focus[ing] precisely on what decision is at issue, because a plan may grant the administrator discretion to make some decisions but not others"); *see also Caldwell*,

271 F. Supp. 3d at 1258 (finding that "[t]he parties agree[d]" to this standard). Under the arbitrary-and-capricious standard, we may ask only whether Unum's interpretation of the plan was "reasonable and made in good faith." *LaAsmar*, 605 F.3d at 796 (quoting *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 825–26 (10th Cir. 2008)). Factors indicating "an arbitrary and capricious denial of benefits include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary." *Cardoza*, 708 F.3d at 1201–02 (quoting *Graham v. Hartford Life & Accident Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009)).

*Firestone* deference applies even when, as here, the same entity (*i.e.*, Unum) both pays benefits (as the insurance company) and decides claims (as the plan administrator)—in other words, when an administrator's (or employer's) dual roles create a structural conflict of interest. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008).[5] Yet, though a structural evaluator–payor conflict doesn't change

---

[5] Many of this court's pre-*Glenn* decisions held that by proving that a plan administrator operated under "an inherent conflict of interest," an ERISA plaintiff could shift to the administrator the burden of establishing that its denial of benefits was *not* arbitrary or capricious. *E.g.*, *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1006 (10th Cir. 2004) (per curiam), *abrogated in part as recognized in Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192–93 (10th Cir. 2009); *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1189–90 (10th Cir. 2007), *abrogated in part as recognized in Spradley v. Owens-Illinois Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1141 (10th Cir. 2012). But in *Glenn*, the Court rejected this approach, reasoning that it was neither "necessary" nor "desirable for courts to create special burden-of-proof rules, . . . focused narrowly upon the evaluator/payor conflict." 554 U.S. at 116. After *Glenn*, the burden remains on the plaintiff to prove that the administrator's decision was arbitrary or capricious. *See, e.g.*, *Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352, 1360 (11th Cir. 2008); *accord Crowe v Lucent Techs. Inc. Pension*

the applicable *standard* of review, we still must consider it as "one factor among many" in evaluating whether an administrator acted arbitrarily or capriciously. *Id.* at 116. Under this approach, the conflict's weight depends on its seriousness—which depends, in turn, on the case's specifics. *Glenn*, 554 U.S. at 117; *accord Holcomb*, 578 F.3d at 1193. If circumstances suggest that the conflict "affected the benefits decision," then the conflict weighs more heavily. *Glenn*, 554 U.S. at 117. But if the administrator took "active steps to reduce potential bias and to promote accuracy"— like "walling off claims administrators from those interested in firm finances" or "imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits"—then the conflict "should prove less important (perhaps to the vanishing point)." *Id.* Tenth Circuit cases have typically described this as a "sliding scale approach," under which we will decrease our deference to the administrator "in proportion to the seriousness of the conflict." *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (quoting *Flinders*, 491 F.3d at 1190).

Here, Unum undoubtedly operated under a structural conflict of interest: paying claims reduces profits. We must weigh that conflict of interest in our arbitrary-and-capricious analysis, "allocating it more or less weight depending on its seriousness." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1162

---

*Plan*, No. Civ-04-1027-M, 2006 WL 2494565, at *2–3 (W.D. Okla. Aug. 25, 2006) (citing *Fought*, 379 F.3d at 1005–06).

(10th Cir. 2010) (citing *Glenn*, 554 U.S. at 115–18). But "[t]he seriousness of a conflict of interest is 'proportionate to the likelihood that the conflict affected the benefits decision.'" *Cardoza*, 708 F.3d at 1202 (quoting *Graham*, 589 F.3d at 1358). And here, I agree with the district court's assessment: Nothing in the administrative record indicates that the structural conflict motivated Unum's decision to deny the Caldwells' claim for accidental-death benefits. *See Caldwell*, 271 F. Supp. 3d at 1259.

This is not a case in which, for instance, the insurance company administrator "ha[d] a history of biased claims administration." *Glenn*, 554 U.S. at 117 (citing John H. Langbein, *Trust Law as Regulatory Law: The Unum/Provident Scandal & Judicial Review of Benefit Denials Under ERISA*, 101 Nw. U. L. Rev. 1315, 1317–21 (2007)); *see also Glenn*, 554 U.S. at 123 (Roberts, C.J., concurring) (giving the example of "a plan that gives 'a bonus for administrators who denied benefits to every 10th beneficiary'" (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.7 (2000))). To the contrary, Unum proffered evidence of the "active steps" that it took to minimize the structural conflict's impact and to promote accuracy. *Caldwell*, 271 F. Supp. 3d at 1260. Unum walled off claims handlers from finance personnel, and it encouraged accurate benefits determinations by penalizing claims handlers for both over- and underpayments. *Id.* at 1260–61.

In sum, I give little weight to Unum's structural conflict of interest, and I would not disturb its interpretation of the "crime" exclusion so long as that interpretation was reasonable. *See Conkright v. Frommert*, 559 U.S. 506, 521 (2010).

10

**B.     William Caldwell's Claim for Accidental-Death Benefits**

Because we review de novo the district court's decision granting Unum summary judgment, we accord that court's analysis no deference, and we address anew whether Unum's interpretation of the "crime" exclusion was arbitrary or capricious, or whether its interpretation was reasonable and made in good faith. *See, e.g.*, *LaAsmar*, 605 F.3d at 795–96.

We interpret ERISA plans as we would any other contract: by looking to the language of the provision at issue—here, the "crime" exclusion—and first determining whether, read in context, it is ambiguous. *See Cardoza*, 708 F.3d at 1203 (citing *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 299–302 (2009); and *Hickman v. GEM Ins. Co.*, 299 F.3d 1208, 1212 (10th Cir. 2002)). In assessing whether a provision is ambiguous, we give words their ordinary and common meaning, asking what a reasonable person in the beneficiaries' position would understand the words to mean. *Weber*, 541 F.3d at 1011. A provision is ambiguous if it is "reasonably susceptible to more than one meaning" or if its meaning is uncertain. *Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1362 (10th Cir. 2009) (quoting *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007)). If a provision is unambiguous, then we will construe it as a matter of law—any interpretation that differs from its ordinary meaning is unreasonable and, therefore, arbitrary and capricious. *Id.* If a provision is ambiguous, though, "then we 'must take a hard look and determine' whether [the plan administrator's] decision

11

was arbitrary in light of its conflict of interest." *Id*. (quoting *Weber*, 541 F.3d at 1011).[6]

Thus, the primary issue here is whether the plan's "crime" exclusion unambiguously includes speeding. That exclusion states: "Your plan does not cover any accidental losses caused by, contributed to by, or resulting from[] . . . an attempt to commit or commission of a crime." Appellants' App. vol. 6 at 902–03. The plan doesn't further define "crime."

This provision is ambiguous regarding whether speeding counts as the "commission of a crime" because the word "crime" is susceptible to two reasonable—albeit contradictory—interpretations: one that covers speeding and one that excepts speeding. *See United States v. Stitt*, 139 S. Ct. 399, 405 (2018) (noting, in a case concerning the Armed Career Criminal Act, that "the word 'crime' itself[] is ambiguous"); *Am. Family Life Assurance Co. v. Bilyeu*, 921 F.2d 87, 89–90 (6th Cir. 1990) (per curiam) (affirming district court's conclusion that "the contractual language regarding commission of a crime" is ambiguous); *Stamp v. Metro. Life Ins.*, 466 F. Supp. 2d 422, 429 (D. R.I. 2006) (concluding that the term "serious crime" as used in an ERISA plan is ambiguous). On the one hand, as the district court observed, Wyoming law labels speeding a misdemeanor and defines misdemeanors as

---

[6] The Caldwells assert that we should construe ambiguous terms against the plan's drafter (that is, against Unum). But because Unum has discretion to interpret the plan, and the arbitrary-and-capricious standard applies, "the doctrine of contra proferentem is inapplicable." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1100 (10th Cir. 1999); *see also Miller*, 502 F.3d at 1253.

crimes. *See* Wyo. Stat. Ann. §§ 6-10-101 ("Crimes which may be punished by death or imprisonment for more than one (1) year are felonies. All other crimes are misdemeanors."), 31-5-301(b) & 31-5-1201(a)–(b) (labeling speeding a misdemeanor punishable by up to six months' imprisonment); *see also Caldwell*, 271 F. Supp. 3d at 1262. And speeding fits most dictionaries' definitions of "crime." *See id.* Black's Law Dictionary, for example, defines a "crime" as "[a]n act that the law makes punishable," *Crime*, Black's Law Dictionary (11th ed. 2019), while the Merriam-Webster Dictionary defines it as "an illegal act for which someone can be punished by the government," *Crime*, Merriam-Webster, www.merriam-webster.com/dictionary/crime (last visited July 17, 2019).

But on the other hand, a reasonable reader of the provision might separate traffic violations, including speeding, which Wyoming locates in the "Motor Vehicles" title (Title 31) of its code, from more serious offenses, such as those against people or property, which Wyoming locates in the "Crimes and Offenses" title (Title 6) of its code—and might consider only the latter "crimes" subject to the coverage exclusion.

Addressing the ambiguous "crime" exclusion, the Caldwells turn to extrinsic evidence to shed light on Unum's intent in its crime exclusion. *See Miller*, 502 F.3d at 1253. And they contend that Unum's internal claims manual required it to adopt the narrower interpretation of "crime," an interpretation that exempts traffic violations, including speeding. The Caldwells note that, in guiding Unum's own application of coverage exclusions for "disabilities/losses arising out of criminal

13

activity," the manual (among other things) advises the insurer's claims handlers to "consider the following":

- "Attempt to commit" or "commission" policy language was intended to exclude disabilities/losses which result from activity that would typically be classified as a crime (or felony, depending on policy language) under state or federal law.

- "Attempt to commit" or "commission" policy language was *not* intended to apply to activities which would generally be classified as *traffic violations*.

- We will generally exclude benefits on claims where a disability/loss results from the claimant's operating under the influence or driving while intoxicated since these offenses are typically classified as crimes (or felonies, depending on the policy language).

Appellants' App. vol. 12 at 1783–84 (emphases added).

I acknowledge that the "manual is not the Plan and cannot override the Plan terms." Appellee's Response Br. at 34 (citing *Wade v. Life Ins. Co. of N. Am.*, 271 F. Supp. 2d 307, 324 (D. Me. 2003) ("The contested manual is not part of the [Summary Plan Description] or other Plan documents . . . . Rather the manual is peripheral to any interpretation of the Plan.")). And as the plan itself states: "The summary plan description and the Summary of Benefits constitute the Plan. Benefit determinations are controlled exclusively by the Summary of Benefits, your certificate of coverage and the information contained in this document [Additional Summary Plan Description Information]." Appellants' App. vol. 6 at 913; *see also id.* at 856–78 ("Summary of Benefits"), 879–912 ("Certificate of Coverage"), 913–24 ("Additional Summary Plan Description Information").

14

Even so, we may rely on Unum's informal policy manual for help in determining the parties' intended meaning of an ambiguous policy term—here, "crime." The internal policy manual helps in determining whether Unum's interpretation of "crime" in denying the Caldwells' claim is reasonable and made in good faith (or instead arbitrary and capricious). *Cf. Fought*, 379 F.3d at 1003 (listing conformity with "any external standards" as one of several reasonableness indicators (quoting Kathryn J. Kennedy, *Judicial Standard of Review in ERISA Benefit Claim Cases*, 50 Am. U. L. Rev. 1083, 1135, 1172 (2001))).

Unum's internal policy manual shows that it did *not* intend "crime" to include traffic violations, except for DUI offenses. And we know that Wyoming cases routinely describe speeding as a traffic violation. *See, e.g., Klomliam v. State*, 2014 WY 1, ¶ 21, 315 P.3d 665, 670 (Wyo. 2014); *Hunnicutt-Carter v. State*, 2013 WY 103, ¶ 11, 308 P.3d 847, 851 (Wyo. 2013); *Formisano v. Gaston*, 2011 WY 8, ¶ 22, 246 P.3d 286, 292 (Wyo. 2011). Now Unum asks us to bless as reasonable its about-face in its treating William Caldwell's traffic violation (speeding) as a crime—and to ignore its expressed written intent not to do so. We should do neither. Instead, we should credit Unum's expressed intent in its internal policy manual not to treat a traffic violation (speeding in Wyoming) as a crime. I would hold that Unum's denial of the Caldwells' claim is unreasonable. *See Boyer v. Schneider Elec. Holdings, Inc. Life & Accident Plan*, 350 F. Supp. 3d 854, 861–66 (W.D. Mo. 2018) (reaching same result when considering the same Unum crime exclusion in a case where the car

15

driver's death resulted from his speeding 80 m.p.h. through a 25 or 35 m.p.h. zone, while passing other automobiles in a no-passing zone).[7]

For all reasons given, I respectfully dissent.

---

[7] I note that Unum chose not to appeal this decision.